**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| LEGACY MEDICAL CONSULTANTS, LP, SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 4:25-cv-01375-P |
| PATRICIA CONKLING D/B/A EAST WEST HEALTH - ABQ LLC; KYLIE BUZZATTO; and WADE KLOEBLEN, | § § § § § | |
| Defendants. | § § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff Legacy Medical Consultants, LP, successor in interest to Legacy Medical Consultants, LLC ("Legacy" or "Plaintiff"), by and through its undersigned attorneys, files this original complaint against Patricia Conkling, doing business as East West Health - ABQ LLC ("Conkling"), Kylie Buzzatto ("Buzzatto"), and Wade Kloeblen ("Kloeblen") (collectively "Defendants"), and alleges as follows:

**I.**
**PRELIMINARY STATEMENT**

1.     This Petition arises out of Defendants' breach of contract by failing to pay $2,108,900.00 for products they purchased from Legacy. As alleged in greater detail below, the parties entered into two agreements under which Legacy agreed to sell, and Defendants agreed to buy, certain human tissue products (the "Products") used to assist in the treatment of chronic, non-healing wounds. Under the First Agreement (as defined below), Defendants were required to provide payment for any and all Products ordered within "thirty (30) days of the date of the Invoice." *See* **Ex. A** ¶ 6. Under the Second Agreement (as defined herein), Defendants were

required to provide payment for any and all Products ordered within "forty-five (45) days of the date of the Invoice." *See* **Ex. B** ¶ 6. Yet after executing the First and Second Agreements (collectively, the "Agreements"), Defendants began missing payments. To date, and despite Legacy's continued requests and reminders to remit all outstanding payments, Defendants still owe at least $2,108,900.00. Legacy brings the following action to collect these overdue amounts.

## II.
## PARTIES

2.      Plaintiff Legacy Medical Consultants, LP, successor in interest to Legacy Medical Consultants, LLC is a Texas Limited Partnership, with its principal place of business located at 9800 Hillwood Parkway #320, Fort Worth, Texas 76177.

3.      Defendant Patricia Conkling is an individual with a principal place of residence at 4200 Meadowlark Lane SE, Ste 2, Rio Rancho, New Mexico 87124. She is a licensed nurse practitioner who was doing business as East West Health – ABQ LLC. East West Health – ABQ LLC is a New Mexico limited liability company with a principal address located at 1500 Lomas Blvd NW, Suite B, Albuquerque, New Mexico 87104.

4.      Defendant Kylie Buzzatto is an individual with a principal place of residence at 24089 N. 165th Drive, Surprise, Arizona 85387. Upon information and belief, she is the Clinic Director at East West Health.

5.      Defendant Wade Kloeblen is an individual with a principal place of residence at 2112 12th Ave S, Nashville, Tennessee 37204.

## III.
## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this suit because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a).

7.      Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Legacy's claim occurred in this judicial district.

## IV.
## CONDITIONS PRECEDENT

8.      Plaintiff generally alleges that all conditions precedent to its right to recovery have occurred or been performed.

## V.
## DEMAND FOR RELIEF

9.      Plaintiff seeks damages from Defendants in an amount of at least $2,108,900.00 that is outstanding and owed Plaintiff, exclusive of any incidental, consequential and exemplary damages, pre- and post-judgment interest, attorneys' fees, and costs of court.

## VI.
## FACTUAL ALLEGATIONS

### A. Plaintiff Legacy Medical Consultants

10.     Legacy Medical Consultants is an integrated marketer of proprietary regenerative biomaterial products processed from human amniotic membrane and other birth tissues. Among other things, Legacy markets amniotic tissue grafts, which are intended to assist in the treatment of external, chronic or non-healing wounds by providing coverage and protection. Legacy markets its products to doctors all over the country.

11.     Before purchasing the Products from Legacy, healthcare providers fill out a customer onboarding document, which sets out the provider's address, practice name, contact information, and billing information.

12.     Healthcare providers also execute a Purchase or Fulfillment/Rebate Agreement with Legacy, which includes terms for tracking and payment of the Products. The agreement sets out the terms of the purchase and sale and dictates the procedures that customers must follow to place orders for the Products, which includes the requirement to keep track of the Products administered to patients, and provide payment for any Products purchased, among other things.

### B.  The Agreements with Defendants

13.     On or about October 18, 2022, Defendants entered into a Rebate/Fulfillment Agreement (the "First Agreement") dated October 18, 2022. A true and correct copy of the First Agreement is attached as **Ex. A**. The First Agreement lists Conkling as the "Provider," and Buzzatto signed as the "Customer." *See* **Ex. A**.

14.     On or about May 16, 2023, Defendants entered into a Purchase Agreement (the "Second Agreement") with Legacy. A true and correct copy of the Second Agreement is attached as **Ex. B**. The Second Agreement also lists Conkling as the "Provider," and Kloeblen signed as the "Customer." *See* **Ex. B**.

15.     Except for the specific human tissue product, prices, and timing of payment, the terms of the Agreements are the same.

16.     Per the terms of the Agreements, Legacy agreed to sell, and Defendants agreed to purchase, human cell and tissue products for Defendants to administer to patients as medically necessary.

17.     After Defendants submitted order forms for the Products, Legacy would generate an order statement reflecting the terms of the purchase and identifying the Products to be shipped. Legacy would then promptly pack and ship the Products identified on the Order Statement for delivery to Defendants using second-day delivery. Legacy would also provide the shipment's delivery status information to Defendants.

18.     On the day the Products were shipped, Legacy would send Defendants an invoice per order via email.

19.     At the end of each month, Legacy would deliver to Defendants an email with a summary PDF document containing all of the prior month's invoices, which reflected all amounts they owed Legacy for the Products ordered in the preceding month. *See* the Affidavit of Kimberly Bini attached as **Ex. C ¶** 5.

20.     Defendants were bound to make payment to Legacy in the amount specified on the monthly invoice for all human tissue products received. Specifically, Paragraph 6 of the First Agreement states: "Customer agrees to pay Legacy Medical Consultants the balance due amount stated in each Invoice within thirty (30) days of the date of the Invoice." **Ex. A ¶** 6. Similarly, the Second Agreement states: "Customer agrees to pay Legacy Medical Consultants the balance due amount stated in each Invoice within forty-five (45) days after product shipment." **Ex. B ¶** 6.

**C. Defendants Fail to Pay Legacy at Least $2,108,900.00 that is Owed**

21.     Despite the plain language of the Agreements, Defendants have failed to make numerous payments on due invoices owed to Legacy for the Products they ordered and received.

22.     At present, Defendants owe Legacy a total of at least $2,108,900.00 for Products they ordered and Legacy delivered to the practice.

23.     More specifically, and as the chart below illustrates, since October 2022, Defendants have failed to make at least ten (10) payments to Legacy for the Products, including but not limited to:

| Invoice No. | Invoice Date | Invoiced Amount | Amount Outstanding | Status |
|---|---|---|---|---|
| 14511 | 11/30/2022 | 164,160.00 | 126,160.00 | OVERDUE |
| 26142 | 04/19/2023 | 233,280.00 | 116,780.00 | OVERDUE |
| 26942 | 04/25/2023 | 233,280.00 | 233,280.00 | OVERDUE |
| 28626 | 05/09/2023 | 233,280.00 | 233,280.00 | OVERDUE |
| 29020 | 05/12/2023 | 233,280.00 | 233,280.00 | OVERDUE |
| 29431 | 05/16/2023 | 233,280.00 | 233,280.00 | OVERDUE |
| 30184 | 05/22/2023 | 233,280.00 | 233,280.00 | OVERDUE |
| 31583 | 05/31/2023 | 233,280.00 | 233,280.00 | OVERDUE |
| 32470 | 06/07/2023 | 233,280.00 | 233,280.00 | OVERDUE |
| 33747 | 06/16/2023 | 233,280.00 | 233,280.00 | OVERDUE |

24.     Legacy promptly informed Defendants that these payments were past due and demanded payment of all amounts owed. Legacy contacted Defendants about these overdue payments and requested return of all unused products.

25.     Despite Legacy's efforts, Defendants did not remit the requested payments.

26.     This directly conflicts with the plain language of the Agreements, which state that all payments for the Products must be made to Legacy within either thirty (30) days of the date of the Invoice or forty-five (45) days after product shipment. **Ex. A-B ¶ 6.**

27.     Upon information and belief, Defendants used Legacy's Products with patients in the course of providing medical treatment.

28.     To date, Legacy has still not received the outstanding liquidated balance of $2,108,900.00 that Defendants owe under the Agreements for the Products ordered and received, which amount is now delinquent. *See* **Ex. C ¶ 6.**

29.     After all just and lawful offsets, payments, and credits, $2,108,900.00 remains due and owing. *See* **Ex. C ¶ 7.**

## VII.
## CLAIMS

### COUNT 1: BREACH OF CONTRACT
*(Against Conkling)*

30. Legacy repeats and re-alleges each and every allegation set forth above as if set forth at length herein.

31. Conkling entered into the First and Second Agreement with Legacy as the "Customer" in connection with the purchase and sale of the Products from Legacy. *See* **Ex. B**.

32. The Agreements are valid and enforceable contracts between Legacy and Conkling under Texas law because the Agreements identify Conkling as the "Customer" and "Provider."

33. The Agreements are governed by Texas law. **Ex. A** ¶ 7.

34. Legacy has fully performed all relevant obligations under the Agreements, by, among other things, generating and sending order statements to Conkling upon receipt of any and all orders; packing and shipping the Products to the practice; and generating and sending monthly invoices to Conkling reflecting all amounts owed by her for the Products she received.

35. Conkling breached Paragraph 6 of the Agreements by failing to pay Legacy for the invoices discussed in Paragraphs 18 and 23 above.

36. Conkling's breach of contract has caused and will continue to cause substantial harm and injury to Legacy, including lost revenue in the amount of at least $2,108,900.00, and other damages in an amount to be determined at trial.

### COUNT 2: BREACH OF CONTRACT
*(In the Alternative, Against Buzzatto & Kloeblen)*

37. Legacy repeats and re-alleges each and every allegation set forth above as if set forth at length herein.

38.     Buzzatto entered into the First Agreement with Legacy as the "Customer" in connection with the purchase and sale of the Products from Legacy. *See* **Ex. A**.

39.     Kloeblen entered into the Second Agreement with Legacy as the "Customer" in connection with the purchase and sale of the Products from Legacy. *See* **Ex. B**.

40.     The Agreements are valid and enforceable contracts between Legacy and Buzzatto and Legacy and Kloeblen under Texas law. Under Texas law, an agent who signs a contract without clearly disclosing that the agent is acting in a representative capacity for the principal is personally liable for the obligations under that contract. *See Ward v. Prop. Tax Valuation, Inc.*, 847 S.W. 2d 298, 300 (Tex. Ct. App. 1992; *Lachmann v. Houston Chron. Pub. Co.*, 375 S.W.2d 783, 785 (Tex. Ct. App. 1964).

41.     Because Buzzatto and Kloeblen signed the Agreements without indicating on the face of the agreement that they were signing solely in a representative capacity for the medical practice, Buzzatto and Kloeblen are personally liable for the amounts due under each agreement.

42.     The Agreements are governed by Texas law. **Ex. A-B ¶ 7**.

43.     By virtue of putting their contact information and email addresses on the Customer Onboarding Documents and being listed as Conkling's points of contact, Buzzatto and Kloeblen were acting as Conkling's agents for her signature as the customer. *See* **Ex. A-B** at 1.

44.     Legacy has fully performed all relevant obligations under the Agreements, by, among other things, generating and sending order statements to Buzzatto and Kloeblen upon receipt of any and all orders; packing and shipping the Products to the practice; and generating and sending monthly invoices to Buzzatto and Kloeblen reflecting all amounts owed by them for the Products they received.

45.    Buzzatto and Kloeblen breached Paragraph 6 of the Agreements by failing to pay Legacy for the invoices discussed in Paragraphs 18 and 23 above.

46.    Buzzatto and Kloeblen's breach of contract has caused and will continue to cause substantial harm and injury to Legacy, including lost revenue in the amount of at least $2,108,900.00, and other damages in an amount to be determined at trial.

### COUNT 3: IN THE ALTERNATIVE, QUANTUM MERUIT
(*Against All Defendants*)

47.    Legacy repeats and re-alleges each and every allegation set forth above as if set forth at length herein.

48.    Legacy provided valuable goods and services to Defendants by, among other things, packing and shipping Defendants the Products they ordered.

49.    Such goods and services were rendered at the specific request, and for the benefit, of Defendants, with knowledge, consent, and acquiescence, and were accepted by Defendants.

50.    Due to the significant cost and amount of the Products delivered, Defendants understood that Legacy expected to be compensated therefor.

51.    Defendants have failed to pay Legacy $2,108,900.00 in overdue payments for the Products delivered to them.

52.    Upon information and belief, Defendants accepted, used, and benefited from the Products by using them to treat patients.

53.    Legacy has made numerous demands on Defendants for payment.

54.    Despite such demand, Defendants have refused to pay Legacy for its products.

55.    As a result of Defendants' refusal to pay Legacy for the value of the Products and other services provided, Legacy has sustained substantial damages, including but not limited to

damages in the amount of at least $2,108,900.00, and other damages in an amount to be determined at trial.

## COUNT 4: IN THE ALTERNATIVE, PROMISSORY ESTOPPEL
### (*Against All Defendants*)

56.    Legacy repeats and re-alleges each and every allegation set forth above as if set forth at length herein.

57.    On or about October 18, 2022 and May 16, 2023 Defendants made written promises to Legacy to pay for all the Products they received.

58.    Due to the substantial expense and amount of the Products Legacy agreed to send to Defendants, they reasonably anticipated that Legacy would rely on their promises of payment.

59.    Legacy reasonably relied on Defendants' promises of payment to its detriment by providing the Products to Defendants.

60.    As a result of Legacy's detrimental reliance on Defendants' promises, Legacy has suffered actual and significant injury, including but not limited to, damages in the amount of at least $2,108,900.00, and other damages in an amount to be determined at trial.

## COUNT 5: IN THE ALTERNATIVE, UNJUST ENRICHMENT
### (*Against All Defendants*)

61.    Legacy repeats and re-alleges each and every allegation set forth above as if set forth at length herein.

62.    Legacy, at its own expense, provided several deliveries of the Products valued at least $2,108,900.00 to Defendants. Legacy also packed and shipped the Products to Defendants and sent them several invoices for those products.

63.    Upon information and belief, Defendants have been enriched by virtue of Legacy providing them with the aforementioned Products. Defendants were able to use those products in treating their patients.

10

64.    Defendants have been unjustly enriched by inducing Legacy to rely on their promises of payment for the valuable goods and services that Legacy provided for them.

65.    As a result of Defendants' acts and omissions, Legacy has suffered actual and significant injury, including, but not limited to damages in the amount of at least $2,108,900.00, and other damages in an amount to be determined at trial. Defendants' breach of contract has caused and will continue to cause substantial harm and injury to Legacy, including lost revenue in the amount of at least $2,108,900.00, and other damages in an amount to be determined at trial.

### COUNT 6: IN THE ALTERNATIVE, QUANTUM MERUIT FOR IMPAX PRODUCTS
*(Against All Defendants)*

66.    Legacy repeats and re-alleges each and every allegation set forth above as if set forth at length herein.

67.    Legacy provided valuable goods and services to Defendants by, among other things, packing and shipping Defendants the Products they ordered.

68.    Such goods and services were rendered at the specific request, and for the benefit, of Defendants, with knowledge, consent, and acquiescence, and were accepted by Defendants.

69.    Due to the significant cost and amount of the Products delivered, Defendants understood that Legacy expected to be compensated therefor.

70.    Defendants have failed to pay Legacy $1,982,740.00 in overdue payments for the Products delivered to them.

71.    Upon information and belief, Defendants accepted, used, and benefited from the Products by using them to treat patients.

72.    Legacy has made numerous demands on Defendants for payment.

73.    Despite such demand, Defendants have refused to pay Legacy for its products.

74. As a result of Defendants' refusal to pay Legacy for the value of the Products and other services provided, Legacy has sustained substantial damages, including but not limited to damages in the amount of at least $1,982,740.00, and other damages in an amount to be determined at trial.

### COUNT 7: IN THE ALTERNATIVE, UNJUST ENRICHMENT FOR IMPAX PRODUCTS
*(Against All Defendants)*

75. Legacy repeats and re-alleges each and every above as if set forth at length herein.

76. Legacy, at its own expense, provided several deliveries of the Products valued at least $1,982,740.00 to Defendants. Legacy also packed and shipped the Products to Defendants and sent them several invoices for those products.

77. Upon information and belief, Defendants have been enriched by virtue of Legacy providing them with the aforementioned Products. Defendants were able to use those products in treating their patients.

78. Defendants have been unjustly enriched by inducing Legacy to rely on their promises of payment for the valuable goods and services that Legacy provided for them.

79. As a result of Defendants' acts and omissions, Legacy has suffered actual and significant injury, including, but not limited to damages in the amount of at least $1,982,740.00, and other damages in an amount to be determined at trial.

### VIII.
### REQUEST FOR JURY TRIAL

80. Legacy requests a jury trial on all issues so triable to a jury and will pay the appropriate fee.

**IX.**
**CONCLUSION AND PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Legacy Medical Consultants, LP asks that the Court issue citations against Defendants to appear and answer, and that Plaintiff be awarded a judgment against Defendants as follows, and in addition to the foregoing relief sought in each cause of action above:

a. Actual and out-of-pocket damages of at least $2,108,900.00, incurred as a direct result of Defendants' breach of the Agreements and other tortious conduct;

b. Incidental damages, consequential damages, and exemplary damages in amounts to be determined at trial;

c. Pre-judgment interest, in an amount to be determined at trial, and post-judgment interest, in an amount to be determined at trial;

d. Court costs, in an amount to be determined;

e. Attorneys' fees and legal costs and expenses, in an amount to be determined and as permitted by law, and statutory damages as permitted by relevant laws; and

f. All other relief to which Plaintiff is entitled, at law or in equity, and which this Court deems just and proper.

Dated:  December 15, 2025.

Respectfully submitted,

**BLANK ROME LLP**

*/s/ Megan Altobelli*
Megan A. Altobelli
Texas Bar No. 24107116
200 Crescent Court, Suite 1000
Dallas, Texas 75201
(972) 850-1467 M. Altobelli Direct
Megan.Altobelli@BlankRome.com

**ATTORNEYS FOR PLAINTIFF**

13

## <u>CERTIFICATE OF SERVICE</u>

I certify that Plaintiff's First Amended Complaint was filed on December 15, 2025, with the Clerk of Court using the Court's CM/ECF system and was electronically served on all parties receiving CM/ECF notification in accordance with Fed. R. Civ. P. 5(b)(2).


Dated: December 15, 2025                 */s/ Megan Altobelli*
                                         Megan Altobelli